STATE OF MAINE             SUPERIOR COURT
PENOBSCOT, SS.             CIVIL ACTION
                            Docket No. AP-04-20

JLH - PEN - 3/29/2005

Fern M. Dowling,
       Plaintiff

JUN 10 2005

v.                                Order on Appeal

FILED & ENTERED
SUPERIOR COURT

MAR 29 2005

PENOBSCOT COUNTY

Bangor Housing Authority,
       Defendant

Fern M. Dowling appeals from an administrative decision affirming the Bangor Housing Authority's decision to terminate her eligibility for a rental-housing subsidy. That decision was based on a hearing officer's decision that she improperly participated in an arrangement with the lessor of the premises where she paid him an amount equivalent to the electric bill for the rental property, in addition to her share of the rent. For the reasons set out below, the written decision issued by the hearing officer does not adequately state the legal basis for his decision, and the court remands this matter for entry of further findings and conclusions.

In an appeal pursuant to M.R.Civ.P. 80B,[1] the appellate court reviews the administrative decision for errors of law, abuse of discretion and factual findings unsupported by substantial evidence in the record. *Hale-Rice v. Maine State Retirement System*, 691 A.2d 1232, 1235 (Me. 1997). This analysis on appeal is limited to the record on appeal. *Sahl v. Town of York*, 2000 ME 180, ¶ 11, 760 A.2d 266, 269.

Dowling leased a residential property from one Robert Wortman. Several months after her tenancy commenced, the Bangor Housing Authority (BHA) approved her application for "section 8" rental subsidy. In June 2004, BHA terminated that subsidy.

---

[1] This court appears to have appellate jurisdiction over the administrative decision challenged here, pursuant to 30-A M.R.S.A. § 4741(1), which allows an action to be brought against a municipal housing authority under the Administrative Procedures Act, 5 M.R.S.A. § 8051 *et seq.*, which includes provisions for appellate review of administrative decisions.

1

Dowling appealed that decision, resulting in a hearing held before a hearing officer. Following that hearing, in his written decision, the hearing officer issued the following findings that have at least arguable support in the record.[2] Dowling and Wortman entered into a side agreement under which she would pay him, in addition to the rent payment not covered by the section 8 rental subsidy, a monthly amount equivalent to the cost of the electric bill she incurred for the premises. Dowling requested such an arrangement because it would allow her to move into a residence that she preferred. The lease agreement between Dowling and Wortman provided that the cost of utilities was included in the rent. When Dowling had become eligible for the subsidy, a BHA representative told her that as a condition to her eligibility, the cost of utilities had to be included in the rent charged by the lessor. Dowling made the monthly supplemental payments to Wortman between September 2003 and May 2004, when she advised BHA that Wortman had served her with a notice to quit the premises. At the same time, she told BHA about the side agreement. Dowling explained that she had been "afraid" to tell BHA about the side agreement and also did not disclose the agreement because she did not want to move.[3]

---

[2] Several of the hearing officer's particular findings have no support in the record that the parties have submitted on this appeal. These include his findings that all subsidy recipients are told that fraud includes side agreements for payment of extra money to the lessor; that BHA told Dowling to report any requests for payments additional to the rent (although Dowling did testify that a BHA representative told her that under the subsidy program, the monthly rental payment necessarily included the cost of utilities); and the hearing officer's references to provisions of the "Request for Tenancy Approval" and the "Housing Choice Voucher Information," neither of which are part of the record.

[3] At the administrative hearing, Dowling was the only live witness. The record on appeal filed by Dowling includes the BHA section 8 housing coordinator's written account of her conversation with Wortman's son, who was involved in managing the rental properties. *See* R. 16. According to the written entry, Wortman's son told the BHA representative that Dowling suggested to his father that, in order to move to a more preferable unit, she pay the electric bill, thus bringing the total monthly payment to something closer to what Wortman (the father) considered to be fair rental value. Wortman, according to the son, agreed to this arrangement. This account differs from the explanation Dowling gave to the hearing officer. However, the hearing officer was entitled to consider and rely on the evidence of Wortman's son's explanation of the situation.

In his decision, the hearing officer set out the grounds that BHA invoked to terminate Dowling's subsidy. This part of the order tracks BHA's underlying termination notice nearly verbatim and reads as follows:

> Your subsidy is being terminated under HUD Code CFR 982.551 Obligations of Participant. (a) Purpose. This section states the obligations of a participant family under the program. (b) Supplying required information. —(1) The family must supply any information that the PHA [Public Housing Authority] or HUD determines is necessary in the administration of the program, including submission of required evidence of citizenship or eligible immigration status (as provided by 24 CFR part 5). "Information["] includes any requested certification, release or other documentation. (4) Any information supplied by the family must be true and complete[.] (e) Violation of lease. The family may not commit any serious or repeated violation of the lease. (g) Owner eviction notice. The family must promptly give the PHA a copy of any owner eviction notice. 982.553 Crime by family members. (e)[4] Evidence of criminal activity. The PHA may terminate assistance for criminal activity by a household member has been arrested or convicted for such activity.

These regulatory provisions contain both a number of different requirements imposed on a subsidy recipient and several different grounds for benefit termination.

In the written decision, after setting out this material from the federal housing regulations, the hearing officer then expressed his findings of fact summarized above. Finally, the decision concluded: "I believe that you were equally responsible for entering into a side agreement with Mr. Wortman and failing to report that information to BHA because it was favorable to you at that time. I am going to continue with the termination of your subsidy."

A decision issued by a lower administrative agency must be "sufficient to apprise the court of the decision's basis." *Chapel Road Associates, LLC v. Town of Wells*, 2001 ME 178, ¶ 10, 787 A.2d 137, 140, *quoting* 1 M.R.S.A. § 407(1). *See also generally Widewaters Stillwater Co., LLC v. Bangor Area Citizens Organized for Responsible Development*, 2002 ME 27, 790 A.2d 597; *Christian Fellowship and Renewal Center v. Town of Limington*, 2001 ME 16, 769 A.2d 834. Here, the hearing officer made factual findings but failed to explain the legal or regulatory basis for his affirmation of BHA's decision to terminate Dowling's rental subsidy. The lack of any articulation for that basis is more problematic because of his recitation of the various standards that BHA cited in

---

[4] The correct citation is to section 982.553(c).

its letter to Dowling advising her of its actions. Those standards include at least five different obligations imposed on a subsidy recipient. The hearing officer's decision leaves unclear whether he affirmed BHA's termination decision on the basis of one, some or all of these grounds, or, for that matter, whether he invoked other legal criteria used to adjudicate someone's eligibility for these benefits. Further, because the hearing officer took the case under advisement without making findings of fact or conclusions of law at the hearing, the transcript does not shed light on the basis for his ultimate decision. *See Chapel Road Associates*, 2001 ME 178, ¶ 11, 787 A.2d at 140 (use of transcript and other extrinsic material to glean basis for administrative decision). This in turn precludes any meaningful examination of the sufficiency of the dispositive facts as found by the hearing officer or of other aspects of his analysis that led to his decision.

In such circumstances, the court must remand the case to the hearing officer for a specific articulation of the basis for his decision. *See Widewaters Stillwater Co., LLC*, 2002 ME 27, ¶ 12, 790 A.2d at 601. "When the Superior Court remands to an administrative board or agency for the purpose of having it take further action reviewable by the Superior Court, the court should retain jurisdiction awaiting the outcome of those further administrative board or agency proceedings." *Valdastri v. City of Bath*, 521 A.2d 691, 692-93 (Me. 1987). The court does so here. Within 14 days of the date the hearing officer issues further findings and conclusions, the parties shall submit a supplemental record on appeal. The plaintiff shall file any supplemental argument within 30 days of filing of the completed record after remand; the defendant shall file any supplemental argument within 30 days of date of the plaintiff's filing; and the plaintiff shall file any reply within 14 days of the date of the defendant's filing.

Beyond the arguments on appeal that cannot be properly addressed in the absence of further proceedings on remand, the record allows the court to reach two additional contentions she raises on this appeal. First, the plaintiff argues that she was deprived of due process because the hearing officer considered the terms of a document entitled "Housing Choice Voucher Information" and hearsay statements attributed to Wortman. First, as is noted above, *see supra* at note 1, the document is not part of the record on appeal. Thus, any factual findings resting on it necessarily cannot be supported by the record and will be stricken. Second, although she was accompanied by advocates and

4

although it was clear during the hearing that the hearing officer used and considered Wortman's hearsay statements, Dowling did not object to that procedure. She has therefore not preserved any appellate challenge based on this argument, despite the constitutional nature of her argument. *New England Whitewater Center v. D.I.F.W.*, 550 A.2d 56, 58 (Me. 1988). Dowling argues that she was relieved of her obligation to object to the administrative procedure because any such objection would have been futile. Suffice it to say that the record does not bear out this assessment.[5]

Second, Dowling seeks an award of money damages representing a reimbursement of the cumulative amount she paid to Wortman pursuant to her side agreement with him. This argument fails for two reasons. First, it was not preserved at the administrative level. Second, the record does not set out the amount that she paid to Wortman for the cost of the electric bill. Rather, she stated only that the amount varied between $75 and $200 per month. Thus, even if this claim falls within this scope of this proceeding, she has not demonstrated a basis for relief here.

The entry shall be:

For the foregoing reasons, the decision dated July 22, 2004, affirming the defendant's decision to terminate the plaintiff's rental housing subsidy is vacated. This case is remanded to the Bangor Housing Authority Public Housing Coordinator for the issuance of further findings and conclusions. This court shall retain jurisdiction pending this remand. The post-remand procedure is set out in the opinion herein.

Dated: March 28, 2005

_____
Justice, Maine Superior Court

---

[5] Dowling's characterization of the quality of the administrative hearing, particularly as set out in her reply memorandum, approaches hyperbole. It leaves one to wonder why, if "BHA's disregard for Ms. Dowling's due process rights was so pervasive, obvious and complete," neither she nor her advocates raised any issue about it at the hearing.

5

Date Filed __8/23/04__     __PENOBSCOT__     Docket No. __AP-2004-20__

                         County

Action ___CIVIL - RULE 80B APPEAL___

**ASSIGNED TO JUSTICE JEFFREY L. HJELM**

FERN DOWLING               vs.       BANGOR HOUSING AUTHORITY

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Pine Tree Legal Assistance<br>61 Main St<br>Bangor ME 04401<br>BY: Carl Kandutsch, Esq. | GROSS, MINSKY & MOGUL, P.A.<br>P. O. BOX 917<br>BANGOR, ME. 04402-0917<br>BY: EDWARD W. GOULD, ESQ. |

| Date of Entry | |
|---|---|
| 8/23/04 | Petition for Review of Administrative Action filed by Plaintiff. |
| 8/23/04 | Motion for Stay of Administrative Action filed by Plaintiff with proposed Order. |
| 8/23/04 | Affidavit in Support for Motion for Stay of Administrative Action filed by Plaintiff. |
| 8/23/04 | Application of Plaintiff to Proceed without Payment of Fees filed by Plaintiff. |
| 8/24/04 | Order filed. The court has reviewed the proposed pleadings. It appears that the applicant is proceeding in good faith and is without sufficient funds to pay certain fees or costs. It is ORDERED that: the filing fee is waived. This order is incorporated into the docket by reference at the specific direction of the court. (Mead, J.) Copy forwarded to Plaintiff's Attorney. |
| 8/24/04 | Notice and Briefing Schedule 80B Appeal of Governmental Actions filed. Copy forwarded to Plaintiff's Attorney. |
| 8/24/04 | Entry of Appearance filed by Edward W. Gould, Esq., on behalf of Defendant Bangor Housing Authority. (Copy of Notice and Briefing Schedule forwarded to Attorney Gould this date.) |
| 8/26/04 | Acceptance of Service of Complaint as to Deft. Bangor Housing Authority by Edward Gould, Esq. (undated) |
| 9/29/04 | Plaintiff's Brief filed with attachments. |
| 9/29/04 | Index to Record with Record filed by Plaintiff. |

STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-04-20

FILED & ENTERED
SUPERIOR COURT
AUG 3 0 2005
PENOBSCOT COUNTY

Fern M. Dowling,
　　Plaintiff

v.　　SEP 14 2005　　Post-Remand Order on Appeal

Bangor Housing Authority,
　　Defendant

Pursuant to the court's order dated March 28, 2005, the Bangor Housing Authority (BHA) hearing officer has issued further findings of fact and conclusions of law relating to his decision to terminate plaintiff Fern M. Dowling's eligibility for a rental-housing subsidy. The court has considered the supplemented record on appeal and the submissions of the parties generated by the hearing officer's order on remand. Dowling's post-remand argument reiterates a number of contentions that the court rejected in its initial order, and the court does not repeat that discussion here.

The background of this case is set out in the court's March order. That order sets out the hearing officer's findings that he articulated in his first order and that the court has already found are supported by the record. In his post-remand decision, the hearing officer articulated the following additional findings. The lease between the lessor (Robert Wortman) and Dowling included the cost of utilities. As the hearing officer also found in his first written decision, Dowling requested this arrangement because it would allow her to move into a different residential unit that she preferred. In June 2003, BHA provided Dowling with a document (which she signed) advising her, in a section entitled "Penalties for Committing Fraud," that she could be evicted from her subsidized residence if her "application or recertification form contains false or incomplete information. . . ." *See* R. 13. The same document also identified payments for expenses not covered by the lease as a form of fraud, and, in a fraud-related section of the document, it instructed the lessee to obtain a written explanation for mandatory payments

1

other than rent. *Id.* Dowling knew that, to qualify under the subsidy, the lease was required to include utilities, and she was aware that her side agreement with Wortman was not lawful.

On the basis of these factual findings that supplemented those set out in his first written order, the hearing officer concluded that Dowling did not disclose information that she was required to produce to BHA, that her side agreement with Wortman was unlawful, that she knew that the side agreement was unlawful, and that it was fraudulent. The hearing officer then explained that BHA was authorized to terminate Dowling's eligibility for rent subsidy because she did not comply with her disclosure obligations under the program and, alternatively, because she engaged in fraudulent conduct. The hearing officer also noted that although Wortman was a culpable participant in the arrangement that resulted in extra rent payments to him, Dowling's own role did not justify a mitigated disposition, because she chose not to report the arrangement to BHA and because she profited from the arrangement.

In this post-remand proceeding, Dowling challenges the sufficiency of the evidentiary basis for the hearing officer's further factual findings. This court reviews the administrative decision for errors of law, abuse of discretion and factual findings unsupported by substantial evidence in the record. *Hale-Rice v. Maine State Retirement System*, 691 A.2d 1232, 1235 (Me. 1997). The court here is satisfied that the hearing officer was entitled to reach the factual findings he has now set out in the two orders.[1]

Title 24 C.F.R. § 982.551(b)(4) obligates a family receiving rent subsidy to provide the housing authority with information that is "true and complete." The hearing officer concluded that Dowling's failure to disclose her side agreement with Wortman violated this provision. This conclusion is not erroneous. Dowling was made aware of

---

[1] In its first order, the court noted that the record did not support an administrative finding that subsidy applicants are advised that side agreements for payments of extra money to the lessor are a form of fraud. *See* March 28, 2005, Order at 2, n.2. In his post-remand order, however, the hearing officer has pointed to evidence that in fact supports such a factual finding. *See* R. 13-14 (document entitled "Things You Should Know"). This finding, which the hearing officer reiterates in his post-remand decision, therefore has evidentiary support. Beyond this, in the text of the March 28 order, the court has identified those findings that enjoy support in the record. In combination with the findings set out in the hearing officer's second decision, these are the findings that are warranted by the record.

2

her responsibilities regarding the terms of her lease agreement with the lessor and, in particular, of the materiality of limitations on the financial terms of that agreement. Based on the hearing officer's findings that she willfully violated those limitations and knowingly failed to disclose these terms to BHA, he was entitled to conclude that Dowling materially violated the terms of her subsidy eligibility and was subject to disqualification for that benefit. *See* 24 C.F.R. § 982.552(c)(i).

Independent of that analysis, the hearing officer also concluded that Dowling's conduct amounted to fraud and that her subsidy should be terminated. Neither aspect of this conclusion is erroneous. In support of this argument that the hearing officer's conclusion that she had engaged in fraud, Dowling relies in part on "The HUD Voucher Program Guidebook: Housing Choice." In her brief on appeal, Dowling describes this as HUD's interpretation and discussion of its regulations. This material is not part of the evidentiary record. Further, even if Maine courts may judicially notice federal administrative regulations, this interpretive material is of a different evidentiary quality and is not subject to judicial notice. Dowling argues that a court may consider and even give deference to an agency's interpretation. This is sometimes true when the agency that issued a decision subsequently appealed relied on its own construction of rules that it administers. *See, e.g., Wright v. Town of Kennebunkport,* 1998 ME 184, ¶ 5, 715 A.2d 162, 164. Here, however, Dowling seeks to impose on BHA's decision HUD's interpretation of HUD regulations. Thus, reliance on the HUD material is not proper under the appellate analysis urged her by Dowling, because Dowling resorts to extrinsic information that does not constitute BHA's own internal analysis. Thus, the court does not consider the information in the "guidebook."[2]

---

[2] In any event, the court notes that the passages quoted by Dowling tend to undermine her contention that her conduct as established by the hearing officer did not rise to the level of fraud, for purposes of the rent subsidy eligibility. The "guidebook" characterizes "fraud" as the omission or concealment of substantive facts, done with the intent to deceive or mislead. The "guidebook" goes on to describe fraud as the intentional failure to report information that is subject to mandatory disclosure, when the purpose for that non-disclosure is to achieve benefits to which the party is not entitled. This is the substance of Dowling's conduct as determined by the hearing officer. Further, although the passages from the HUD material cited by Dowling focus on a lessor's responsibility for side agreements and the consequences to which those side agreements expose the lessor, that material is not helpful in determining the effects of Dowling's conduct on her

3

As is noted above, the evidence presented to the hearing officer – in particular, the provisions of the informational document entitled "Things You Should Know," -- classifies the type of conduct in which Dowling engaged as fraudulent. Further, that conduct as established by the hearing officer easily fits within more conventional notions of fraud. *See Francis v. Stinson*, 2000 ME 173, ¶ 38, 760 A.2d 209, 217 (fraud is committed with the actor "(1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to her detriment."). The commission of fraudulent conduct is an adequate basis for terminating rental assistance. *See* 24 C.F.R. § 982.552(c)(iv). The hearing officer was therefore entitled to conclude that Dowling's conduct was fraudulent and was a basis for disqualification from the rent subsidy.

As applied here, the reasoning in cases such as *Crutchley v. Costa*, 2002 N.Y.Misc. LEXIS 161 (Dist.Ct.N.Y., February 13, 2002), is not persuasive. *Crutchley* involved a direct action by the lessor against a former tenant, in which the former sought an order of eviction and recovery of rent arrearages for a period of time after a section 8 subsidized lease had expired. The question at bar is whether Dowling's conduct disqualified her from entitlement to ongoing subsidy benefits. The *Crutchley* analysis is inapposite.

The entry shall be:

For the foregoing reasons, the decision of the Bangor Housing Authority is affirmed.

---

continuing eligibility for rent subsidy. In contrast to other cases where a tenant is truly victimized by a lessor who is the sole beneficiary of a side agreement for extra rent, the salient point here is that, as the hearing officer found, Dowling herself instigated the arrangement where she made payments outside of the authorized lease terms, and she did so for her own benefit. Dowling's attempt to cast herself as Wortman's victim (and, even more notably, a victim of BHA because of its decision to terminate her benefits) is undermined by the hearing officer's finding regarding the nature of and reasons for her participation in the unlawful arrangement with her landlord.

Dated: August 18, 2005

_____
Justice, Maine Superior Court

5

Date Filed 8/23/04     PENOBSCOT     Docket No. AP-2004-20
                         County

Action ____ CIVIL - RULE 80B APPEAL ____

   ASSIGNED TO JUSTICE JEFFREY L. HJELM


FERN DOWLING                           VS.     BANGOR HOUSING AUTHORITY

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Pine Tree Legal Assistance<br>61 Main St<br>Bangor ME  04401<br>BY: Carl Kandutsch, Esq. | GROSS, MINSKY & MOGUL, P.A.<br>P. O. BOX 917<br>BANGOR, ME.  04402-0917<br>BY:  EDWARD W. GOULD, ESQ. |

| Date of Entry | |
|---|---|
| 8/23/04 | Petition for Review of Administrative Action filed by Plaintiff. |
| 8/23/04 | Motion for Stay of Administrative Action filed by Plaintiff with proposed Order. |
| 8/23/04 | Affidavit in Support for Motion for Stay of Administrative Action filed by Plaintiff. |
| 8/23/04 | Application of Plaintiff to Proceed without Payment of Fees filed by Plaintiff. |
| 8/24/04 | Order filed.  The court has reviewed the proposed pleadings.  It appears that the applicant is proceeding in good faith and is without sufficient funds to pay certain fees or costs.  It is ORDERED that:  the filing fee is waived.  This order is incorporated into the docket by reference at the specific direction of the court. (Mead, J.)  Copy forwarded to Plaintiff's Attorney. |
| 8/24/04 | Notice and Briefing Schedule 80B Appeal of Governmental Actions filed. Copy forwarded to Plaintiff's Attorney. |
| 8/24/04 | Entry of Appearance filed by Edward W. Gould, Esq., on behalf of Defendant Bangor Housing Authority. (Copy of Notice and Briefing Schedule forwarded to Attorney Gould this date.) |
| 8/26/04 | Acceptance of Service of Complaint as to Deft. Bangor Housing Authority by Edward Gould, Esq.  (undated) |
| 9/29/04 | Plaintiff's Brief filed with attachments. |
| 9/29/04 | Index to Record with Record filed by Plaintiff. |